[No. 57059–1.   En Banc.   March 28, 1991.]

BENJAMIN LEVINE, *Respondent*, v. JEFFERSON COUNTY, ET AL, *Petitioners*.

*John F. Raymond, Prosecuting Attorney,* for petitioners.

*Erwin P. Jones, Jr.,* for respondent.

DORE, C.J.—The Jefferson County Board of Commissioners seeks review of a Court of Appeals decision directing it to issue a building permit to respondent Benjamin Levine. The Board contends the Court of Appeals did not have the authority to order it to issue the permit without the mitigative restrictions it imposed pursuant to the State Environmental Policy Act of 1971 (SEPA). Levine contends the restrictions cannot be sustained either because the record does not justify their imposition or because Jefferson County does not have identifiable policies to support them as required by SEPA.

### FACTS AND PROCEDURE BELOW

On August 25, 1986, respondent Benjamin Levine applied to appellant Jefferson County for a building permit to build a commercial small log sawmill. The County determined the sawmill was a project under SEPA. On September 16,

1986, the Board issued a determination of nonsignificance[1] pursuant to SEPA after reviewing an environmental checklist and other information on file with the Jefferson County Planning Department. After a 15–day period for public comment, and over Levine's objections, the Board added nine mitigative restrictions to the determination of nonsignificance. These conditions required a buffer around the mill site, limited hours of operation, hooded lighting, forward traffic flow, no parking or loading on county roadways, compliance with noise abatement regulations, and disposal of wood waste and drainage that does not affect groundwater. The Board approved the building permit and mitigative restrictions, and the permit incorporating the restrictions was issued on October 29, 1986. Levine appealed the imposition of the mitigative restrictions to superior court. The record below and briefs were submitted, but no additional testimony was taken. The court determined that the Board lacked authority to impose mitigative restrictions without agreement or request for them by the proponent of the project. The court ordered the Board to issue the building permit without them. "Findings of Fact and Conclusions of Law and Judgment" were filed August 14, 1987.

The Court of Appeals accepted review and held that the trial court had erred, stating that an agency may impose mitigative restrictions after a determination of nonsignificance under the substantive authority of SEPA even though the proponent does not request the restrictions. The court also held that the Board had failed to satisfy procedural requirements of RCW 43.21C.060, *i.e.*, the Board had failed to cite in writing either the agency's policies underlying the mitigative restrictions or the specific environmental

---

[1]A determination of nonsignificance is issued after an agency makes a negative threshold decision, *i.e.*, the agency decides that a project does not constitute a "major [action] significantly affecting the quality of the environment". WAC 197–11–330, 197–11–340. If a negative threshold decision is made, an environmental impact statement (EIS) need not be prepared. WAC 197–11–330.

impacts sought to be mitigated. The Court of Appeals initially reversed and remanded to the Superior Court with instructions to enter an order directing the Board to reconsider the application.

The Court of Appeals then granted Levine's motion for reconsideration and withdrew its original opinion. *Levine v. Jefferson Cy.*, 57 Wn. App. 1002 (1990). The court issued virtually the same opinion but changed the last paragraph. The new opinion stated that Levine should not be required to wait any longer for the County to repair its mistakes, and ordered the permit issued without the mitigative restrictions attached. The building permit had been issued at that point and Levine had at least partly built his sawmill.

The County petitions this court. Although it concedes that it failed to identify the policies underlying its mitigative restrictions, it contends that the Court of Appeals improperly ordered the building permit to issue without the restrictions instead of remanding to the County's Board of Commissioners so the Board could identify its policies in writing as required by SEPA. Levine contends that the record does not justify the imposition of the mitigative restrictions and that the policies contained in the Jefferson County Comprehensive Plan and ordinances are not sufficiently specific to support them and, therefore, the permit must be issued without them.

ANALYSIS

The primary issue is whether the Court of Appeals correctly ordered the building permit issued without mitigative conditions or whether the court should have remanded to allow the County's Board of Commissioners to identify its policies in writing.

As a preliminary matter, we note that the parties in their briefs do not challenge the Court of Appeals holding that the County had legal authority to attach the mitigative restrictions despite the fact that Levine did not request them. However, at oral argument, Levine raised a new issue

for the first time. He argued that the SEPA regulatory scheme of WAC 197–11 prohibited the County from attaching the restrictions after its initial determination of nonsignificance (DNS). We find his argument unconvincing.

■ Levine relied solely on WAC 197–11–350, which permits the County to specify mitigation restrictions on an applicant's proposal prior to making a threshold determination, to bolster his argument that the County had the authority to add mitigative restrictions only before it issued the DNS. However, when WAC 197–11–350 is read in conjunction with 197–11–340, it is clear that the agency had the authority to attach mitigative restrictions not only *before* issuing a DNS, if doing so would enable it to issue the DNS, but also *after* issuance of the DNS, based on public comment. WAC 197–11–340(c) provides that any person may submit comments to the lead agency within 15 days of the issuance of the DNS, and 197–11–340(f) provides that the responsible official shall reconsider the DNS based on timely comments and may modify the DNS. This is precisely what occurred here. Levine's argument that the County lacked legal authority to attach the mitigative restrictions is unpersuasive.

Nevertheless, we hold the Court of Appeals properly ordered the permit issued without the mitigative restrictions because the County created a thoroughly inadequate record, devoid of any agency findings of facts or citations to any policies to support the attachment of the restrictions.

We find the case of *Nagatani Bros., Inc. v. Skagit Cy. Bd. of Comm'rs,* 108 Wn.2d 477, 739 P.2d 696 (1987) controlling. In *Nagatani,* the Skagit County Commissioners denied Nagatani's proposal for a preliminary plat for 29 residential lots. We remanded to the trial court with directions to remand to the County Commissioners with directions to approve the preliminary plat.

The Planning Commission recommended the denial in *Nagatani,* and the plat was denied without a hearing, based on four reasons: (1) the placement of 29 residential lots adjacent to agricultural land and the anticipated conflicts

between the two uses; (2) the removal of 18.5 acres from agricultural use; (3) the perceived adverse impact on traffic; and (4) the noncompliance of the plat with the County's Comprehensive Plan. 108 Wn.2d at 479. We held the second, third, and fourth reasons invalid. 108 Wn.2d at 480–81. The removal of agricultural land was the result of zoning, not this owner's plat; there was absolutely nothing in the record to support a possible adverse traffic impact; and the zoning ordinance permitting residential development controlled over the conflicting Comprehensive Plan.

This left only the first reason as sole support for denial of the plat. 108 Wn.2d at 480. However, we held that the record was "wholly unsatisfactory to justify denial upon future environmental impact". 108 Wn.2d at 480. The four reasons noted were the only support for the plat's denial, with the exception of a letter from the Skagit County Health Department in which it expressed concern over the proximity of the plat to agricultural land, but concluded that the concerns had been addressed to the Department's satisfaction. 108 Wn.2d at 480–81. The draft EIS contained only a recommendation for minor traffic changes by the Department of Transportation and comments by a neighbor expressing concern about traffic and flood levels. 108 Wn.2d at 481. This constituted the complete record upon which the denial was based. We held the record was inadequate to support denial of the plat for environmental reasons.

In *Nagatani*, we noted that governmental action under SEPA may be "conditioned or denied *only on the basis of specific, proven significant environmental impacts*". (Italics ours.) 108 Wn.2d at 482 (citing RCW 43.21C.060). RCW 43.21C.060 provides in relevant part:

> . . . Any governmental action may be conditioned or denied pursuant to this chapter: *Provided,* That such conditions or denials shall be based upon policies identified by the appropriate governmental authority and incorporated into regulations, plans, or codes which are formally designated by the agency (or appropriate legislative body, in the case of local government) as possible bases for the exercise of authority pursuant to this

chapter. Such designation shall occur at the time specified by RCW 43.21C.120. Such action may be conditioned only to mitigate specific adverse environmental impacts which are identified in the environmental documents prepared under this chapter. These conditions shall be stated in writing by the decisionmaker.

We stressed the need for an administrative body to provide the court with an adequate record upon which to make its decision:

We emphasize the necessity of administrative bodies following the applicable statutes and the applicable written regulations and policies. An adequate record, including intelligible findings based upon the evidence presented to the decision makers, must be made to allow required judicial review.

108 Wn.2d at 482. The instant case is controlled by *Nagatani*. The record here states that 15 letters were received in opposition to the project expressing concern over noise impacts, erosion of real estate values, additional truck traffic, road deterioration, pollution of nearby Eagle Creek, impact to the community water supply, hours of operation, buffers around the site, purchase of additional property by the Levines, and flooding and runoff from Eagle Creek. In addition, some comments were made by neighbors in support of the sawmill.

Based on these comments, the County conditioned the permit with the nine mitigative restrictions. As in *Nagatani,* there is no evidence that the perceived ill effects that concerned the neighbors would actually materialize. There are no agency findings of fact indicating that the restrictions reflect actual adverse impacts. There is no evidence in the record that the County considered any identifiable policies in attaching the mitigative restrictions. In fact, the trial court made a factual finding, which was never challenged, that the Jefferson County Commissioners consulted no written or generally accepted standards when attaching the restrictions. An unchallenged finding of fact is considered a verity on appeal. *Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 818, 792 P.2d 500 (1990). The inadequate record before us contains absolutely no justification

for the imposition of the stringent mitigative restrictions. The Court of Appeals properly ordered the permit issued without the restrictions attached.

Because we hold that the record does not support attachment of the mitigative restrictions, there is no need to address Levine's second argument that Jefferson County does not have sufficient written policies to justify the restrictions.[2]

### Conclusion

We uphold the Court of Appeals decision ordering the building permit to be issued without mitigative restrictions. The County has provided us with a record devoid of any evidence supporting attachment of the restrictions. The record fails to address specific, proven environmental impacts. There is no citation in the record to any identifiable agency policy upon which the restrictions were based, and there is no indication that the County actually considered any such policies. The County, at this late date, is not entitled to a remand to identify these policies.

UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

BRACHTENBACH, J. (concurring)—I concur with the majority and write separately to emphasize that this is a very narrow decision, factually and legally.

The majority correctly states that the record is devoid of factual or legal basis for the conditions imposed upon the building permit. Majority, at 581. Despite this lack of any justification for imposing conditions, the County blithely refers to these deficiencies as "minor procedural errors." Brief of Petitioners, at 8.

To appreciate the limited extent of our holding, it is necessary to consider the action of the County. After review of

---

[2]We do note however, that the trial court made various findings of fact which were never challenged by the County that Jefferson County has no written policies to justify imposition of the mitigative measures. These unchallenged findings would normally be accepted as verities on appeal. *Nearing,* 114 Wn.2d at 817.

the record, which the County certified as the complete record, the trial court entered findings of fact and conclusions of law. Clerk's Papers, at 5–9. In essence, the court held that the County had no zoning, land use or environmental ordinances governing the issuance of building permits with environmental mitigation conditions. The trial court found a total lack of standards, objective or otherwise, upon which the County could or did rely. The trial court entered judgment directing issuance of a building permit without conditions. Clerk's Papers, at 4.

What did the County appeal? Its brief is startling to say the least. The County makes *NO* assignment of error. It does not assign error to the findings of fact, conclusions of law, or the judgment. At the end of its brief the County merely states that it "necessarily takes exception" to six findings of fact. The whole brief violates the explicit requirements of appellate procedure. RAP 10.3(a)(3), 10.4(c).

In its brief the County asserts that the record supports compliance with its ordinance, but that brief contains only one citation to the "record", and that reference is to the first page of its trial brief. Brief of Petitioners, at 1, 9. There is no citation in the County's brief to the trial court record.

The County's position in the trial court and in its brief in the Court of Appeals was that it had the legal authority to condition the permit as it did. The trial court held that the County lacked legal authority; the Court of Appeals affirmed. In both courts the County wanted affirmance of the administrative actions it already had taken. After losing in both courts the County now wants the matter to go back to the County Commissioners so that it can start over. It now asks a second opportunity after insisting all the time that it was proceeding properly. On this record the County is not entitled to still another attempt to correct the law and facts when it was in charge of that law and those facts from the outset.

There is another disturbing aspect to the County's effort to resurrect a lost cause. *Nagatani Bros., Inc. v. Skagit Cy. Bd. of Comm'rs,* 108 Wn.2d 477, 739 P.2d 696 (1987) was filed July 16, 1987. The County's brief in the Court of Appeals was filed February 22, 1988, 7 months later. That brief never cites *Nagatani* despite its obvious relevance, and despite the fact that plaintiffs had called it to the attention of the trial court in a supplemental brief. The plaintiffs' brief in the Court of Appeals relied heavily upon *Nagatani,* citing it 10 times. The County filed no reply brief. In its petition for review the County still persists in ignoring *Nagatani.*

Finally, this case is distinguishable from *Cougar Mt. Assocs. v. King Cy.,* 111 Wn.2d 742, 765 P.2d 264 (1988), where procedural errors, rather than lack of legal authority, justified remand for further consideration.

CALLOW, J. Pro Tem., concurs with BRACHTENBACH, J.